# MARYLAND REPORTS.

## JUNE TERM, A. D., 1856.

## THE SPRING GARDEN MUTUAL INSURANCE CO. *vs.* RANDALL EVANS, use of JAS. P. RILEY.

Where the evidence is so loose and inconclusive that the jury, instead of making legitimate and reasonable inferences, would be indulging in conjecture and wild speculation were they to find from it the fact sought to be established, the court may instruct them that there is *no evidence* of such fact.

The president of an insurance company on being asked "what further preliminary proof of the loss was required," answered, that "the policy will show that." HELD, that this answer was not a tacit admission that there was no objection taken to any defect in the preliminary proof that had been furnished, nor a waiver of such proof.

The non-production of papers after notice duly served has no other *legal* effect than to allow the opposite party to prove their contents; the refusal to produce does not authorise any inference against the party refusing.

But where a party, under the obligation to sustain his defence by proof, has possession of the best evidence and fails to produce it, but attempts to sustain his defence by inferior evidence, it authorises the inference that he does not furnish the best, because it would injure, instead of benefitting, his cause.

Where all the facts and circumstances relating to the subject are admitted, a party has the right to ask the *court* to instruct the jury whether the evidence is sufficient to establish a waiver or not.

A prayer by the defendant that there is no evidence of a waiver, necessarily concedes the truth of all the plaintiff's evidence, and all legitimate inferences which may be drawn from it.

1    v.9

APPEAL from the Superior Court of Baltimore city.

*Covenant,* by the appellee against the appellant, a Pennsylvania corporation, doing business by agents in Baltimore, to recover $1500 upon a fire insurance policy, issued by the appellant to Evans upon certain merchandise in a store in Winchester, Virginia. Plea, *non infregit.*

*1st Exception.* The plaintiff offered in evidence the policy sued on, which expired on the 29th of January 1850, and proved that the fire occurred on the 20th of March 1849. The only condition of the policy material to this case is the *ninth,* which is fully set out in the opinion of this court. The plaintiff also proved that the loss by the fire amounted to at least $1500, and the assignment of the policy to Riley after the fire. He then offered the testimony of Hammond and Lavender, and the notice given by him to produce the papers containing the preliminary proof, all of which is sufficiently stated in the opinion of this court. To the testimony of Lavender, so far as it details declarations of the president of the company, the defendant objected, because they were not binding upon defendant without proof of special authority from the company, but the court (FRICK, J.) overruled this objection and permitted the evidence to go to the jury, and to this ruling the defendant excepted.

*2nd Exception.* The defendant then asked instructions to the jury, in substance as follows:

1st. That the plaintiff is not entitled to recover in this action, unless the jury find from the evidence in the cause that Evans, before the institution of this suit, furnished to the defendant such preliminary proof of his loss as is required by the 9th condition of the policy sued on, unless they further find that the furnishing of such proof was waived by the defendant.

2nd. (This prayer is fully stated in the opinion of this court.)

3rd. That the declaration testified to by Lavender, as made by a person representing himself as the president of the defendant, was not a waiver by defendant of the production by the plaintiff of the preliminary proof required by the 9th con-

dition of the policy, unless the jury find from the evidence that such declaration was made by such person by authority of the defendant, and that by it the plaintiff was deceived and misled as to the nature of the proof he was required to furnish of his loss.

4th. That the failure of the defendant to produce the papers referred to in the notice served by the plaintiff upon its attorney, the defendant giving no reason or excuse for such nonproduction, does not authorise the jury to presume or find that such papers contained the preliminary proof of the plaintiff's loss required by the 9th condition of the policy, and that such failure or refusal is not a circumstance from which the jury can legally presume that such papers contained such proof.

5th. That the *onus* is on the plaintiff to prove that he furnished to the defendant the preliminary proof of his loss required by the 9th condition of the policy, and that it is not incumbent upon the defendant to prove that such proof was not furnished.

6th. That if they find the facts stated by Lavender, and that the person with whom he had the conversation did not point out or specify any particular defect in the plaintiff's proof of loss, that such failure of said person to point out and state what, if any, were the defects in the plaintiff's proof, does not of itself, nor in connection with the facts detailed by Lavender, amount to a waiver by defendant of the preliminary proof, which, by the 9th condition of the policy, the plaintiff was bound to furnish to defendant.

The court granted the 1st and 5th prayers, but rejected the others, and to this rejection the defendant excepted.

*3rd Exception.* The defendant then objected to the testimony of Hammond, in so far as it relates to the contents of papers delivered by him at defendant's office in Philadelphia, because the notice served upon defendant had not laid a sufficient foundation therefor. This objection was overruled, the court refusing to entertain it at this stage of the cause, being after all the prayers on both sides had been presented and discussed, and the instructions of the court given thereon to the jury; and the testimony itself objected to, having been

read to the jury as a portion of that on which the prayers were discussed and upon which the instructions of the court were based. To the refusal of the court to entertain this objection, the defendant excepted.

The verdict and judgment were in favor of the plaintiff for $1905, damages and costs, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*Charles H. Pitts* for the appellant, argued:

1st. That the refusal of the court below in the third exception to receive the objection to Hammond's testimony is error, for which the judgment should be reversed. Before the act of 1825, ch. 117, it was not necessary to make objections to testimony below. In *Handy vs. The State,* 7 *H. & J.,* 43, illegal evidence had been received without objection, and the Court of Appeals rejected the evidence and reversed the judgment. They cite *Gittings vs. Hall,* 1 *H. & J.,* 14, as authority for this principle, which is also recognised in the case of *Whittington vs. Farmers Bank of Somerset & Worcester,* 5 *H. & J.,* 489, and 6 *H. & J.,* 548. The act of 1825 changes the rule established by these cases only so far as to prohibit the parties from urging and insisting upon any point or question before the appellate court, which should not appear by the record to have been raised or made in the court below, and "upon which that court may have rendered judgment." This act does not say at *what time* the point or question shall be made in the inferior court. It may be made at any time during the trial before the case is given to the jury. *Evan's Pr.,* 298. In *Hoddy's Lessee vs. Harryman,* 3 *H. & McH.,* 584, testimony was read to the jury without objection, and the day after objection was made to it and sustained by the court, and the Court of Appeals, in 3 *H. & McH.,* 591, say: "The General Court had a right to direct the jury that the testimony offered and admitted by the parties was illegal and inoperative, the Court of Appeals being of opinion that they are not bound by the admissions of the

parties." The appellant having made its objection in time, the court's refusal to entertain it deprived the defendant of ' the right to have the question as to its admissibility decided by this court, and the judgment of the court below denying this right ought to be reversed.

2nd. The first exception presents the question as to the admissibility of that part of Lavender's testimony in which he details the declarations of the president of the company. The president is not a party to the suit, and his declarations are not admissible on that ground. If admissible at all, they were so only upon the ground that he was the agent of the company and had authority to bind it by such declarations. There was no evidence to show that he had such authority by express grant, or as incident to his office under the charter and laws of the company. Corporations, like natural persons, are bound only by the acts and contracts of their agents, made and done within the scope of their authority. "The representations, declarations and admissions of the agent of a corporation stand upon the same footing with those of the agent of an individual. To bind the principal they must be within the scope of the authority confided to the agent, and must accompany the act or contract which he is authorised to do or make." *Angel & Ames on Corp.*, 288, 293, 301, 302. 7 *H. & J.*, 104, *City Bank of Baltimore vs. Bateman.* In deciding the question raised by this point this court is not confined to the ground of objection stated in the exception. If the testimony was inadmissible upon any ground, the judgment must be reversed upon this exception. 3 *G. & J.*, 441, *Sothoron vs. Weems.*

3rd. The next point presents questions raised by the 2nd, 3rd and 6th prayers of the appellant. The only evidence in the record that the plaintiff furnished the preliminary proof required by the 9th condition of the policy is that of Hammond. Could any rational mind legally find from that testimony that such proof was furnished? 2 *G. & J.*, 382, *Davis vs. Barney.* There is, also, no evidence of waiver. The only testimony relied on to prove it is that of Lavender. This, so far from showing a waiver, shows a direct assertion that the

company required the proof "laid down in the policy." The policy was in the possession of the plaintiff, and he had merely to look at the 9th condition and be at once informed of the kind and quantity of proof which he had to furnish. In the case of the *Columbian Ins. Co. vs. Lawrence, 2 Pet.*, 53, Chief Justice Marshall, in delivering the opinion of the Supreme Court, says: "We know of no principle or usage which requires the underwriters to specify their objections, or which justifies the inference that any objection is waived." The objection to pay the loss was based upon the insufficiency of proof to satisfy the company that there was so large a stock of goods as the plaintiff claimed to be paid for. It cannot be a waiver, because that which is said to be waived is clearly "within the objection." 6 *Md. Rep.*, 359, *Tyson vs. Webster, Adm'r of Macauley.* The ground of the refusal to pay is not inconsistent with the requirement of preliminary proof. The person speaking as president did not deny the liability of the defendant except as to amount. The amount was to be determined by proof. The proof was "laid down in the policy," the very thing said to have been waived was expressly insisted on. In the cases of *Allegre vs. Md. Ins. Co.*, 6 *H. & J.*, 411, 412, and *Md. Ins. Co. vs. Bathurst*, 5 *G. & J.*, 159, the court put the waiver, in the first case, upon the ground that the company denied that the subject of loss was covered by the policy; in the second case, that the ground taken by the company was wholly inconsistent with a demand for preliminary proof. In this case the ground of refusal was not thus inconsistent. The question of waiver is not exclusively for the jury. It is for the court to say, upon an admitted state of facts, whether there is a waiver in law or not. The 6th prayer embodies and admits all the facts bearing upon the question of waiver, and the court was therefore properly asked to instruct the jury that these facts did not in law amount to a waiver. The 3rd prayer was improperly rejected. The jury could not legally find a waiver without first finding that the declarations relied upon were the declarations of the defendant by its authorised agent. The declarations could not be construed as a waiver, unless the plaintiff was thereby

misled and deceived as to the proof he was required to furnish. If the declarations informed him that the company insisted upon a compliance with the 9th condition of the policy, of course there was no waiver in fact or in law.

4th. The court erred in refusing the defendant's fourth prayer. A party is not bound to produce papers under notice. The refusal to produce papers gives the adverse party a right to offer parol proof of their contents. This is the only legal effect of a notice, and failure or refusal to produce papers. *Evan's Pr.*, 293. 1 *Greenlf. on Ev.*, sec. 37. 3 *Camp.*, 363, *Cooper vs. Gibbons*. 1 *Starkie's Rep.*, 314, *Lauson vs. Sherwood*. 4 *How.*, 246, 247, *Clifton vs. The United States*. 7 *Md. Rep.*, 101, *Union Bank vs. Kerr*.

*Robert J. Brent* and *Charles F. Mayer* for the appellee, argued :

1st. The first exception is to the testimony of Lavender, so far as it details the declarations of the president, and the reason stated for the objection is that the declarations were not binding on the company without proof of special authority. We must therefore assume that the objection is to these declarations of the president, or a person whom the proof tended to show was the president. 2 *Greenlf. on Ev.*, sec. 518. 1 *M. & Malk.*, 200, *Barrett vs. Deere*. It will be observed that the papers relating to the preliminary proof had been left with the president by Hammond, and that the company failed to account for their non-production even after service of notice to produce them. Every presumption, therefore, that can be drawn from the withholding of the papers under circumstances like these should be drawn as against the company. But the true question is, whether these declarations are not admissible for the purpose of the cause? If admissible for any purpose there is no error in the ruling of the court. The rule of law is, that the objector to evidence must confine his objection strictly to that which is illegal. If some of the declarations are admissible for any purpose and a part inadmissible, then the court did right in overruling a general objection to all of them. 3 *Gill*, 220, *Budd vs. Brooke*. Tested by this rule, there can

8                 MARYLAND REPORTS.

Spring Garden Mutual Ins. Co. vs. Evans, use of Riley.

be no difficulty in saying that so much of the declarations as referred to the report of the agent and the size of the room, and its consequent incapacity to hold the goods claimed to have been lost, was clearly admissible, because it went to the merits of the claim, by enabling the plaintiff to show:—*first*, on what ground his claim was resisted, and, *secondly*, that the ground of defence was untenable in fact. This view of the evidence excepted to would of itself sustain the ruling of the court in the first exception.

But the declarations were admissible further:—*first*, as a tacit admission, that there was no objection taken to any defect in the preliminary proof furnished to the company in March 1849, through Hammond. If the company retained the proof, and on being interrogated afterwards as to their reason for not paying, objected on a ground going alone to the merits of the claim, it certainly was legitimate evidence tending to satisfy the jury that there was in fact no defect in the preliminary proof now withheld by the defendant. The notice to produce certainly entitled us to give secondary evidence of the contents of the proof furnished. If we could show that the president had expressly said that the proof in his possession was full and complete, we could certainly have offered that declaration after notice to produce and failure to gratify it, and so we are entitled to prove any declaration tending to show a tacit acquiescence in the sufficiency of the preliminary proof. This much of the declaration was therefore evidence for the jury in considering the sufficiency of the preliminary proof thus withheld by the defendant. But, *secondly*, even in cases where the preliminary proof is adduced and shown to be clearly defective, the company, through its proper officer, may *waive* the objection and render it unnecessary to supply the defect. All the authorities show that the assignment of a ground of defence going to the merits, and the failure to rely upon objections to the preliminary proof, is a waiver of objection to such proof. This much is clear, but the weight of authority is in favor of the proposition, that the insurance company are bound, when receiving preliminary proof, to disclose the specific defect, that the party seeking indemnity

for loss may at once supply the formal defect if in his power. This proposition seems to commend itself by considerations of equity and good faith, and by maintaining in full force the broad distinction between matters of form which may be supplied and the substance of the claim itself, and we maintain it as sound law upon the following authorities: *Angell on Fire & Life Ins.*, secs. 242 to 248, and the cases there cited. 6 *Cush.*, 342, *Clark vs. New Eng'. Ins. Co.* 6 *Cowen*, 404, *Francis vs. Ocean Ins. Co.* 3 *Comst.*, 122, *O'Niel vs. Buffalo Ins. Co.* 2 *Do.*, 53, *Bodle vs. Chenango Ins. Co.* 1 *Hoff. Ch. Rep.*, 172, *McEvers vs. Lawrence.* 7 *Cowen*, 462, *Dawes vs. North River Ins. Co.* 25 *Wend.*, 383, *McMasters vs. Westchester Ins. Co.* 16 *Do.*, 385, *Etna Ins. Co. vs. Tyler.* 2 *Pet.*, 25, *Columbian Ins. Co. vs. Lawrence.* 10 *Pet.*, 507, *Columbian Ins. Co. vs. Lawrence.* 9 *How.*, 390, 403, *Taylor vs. Merchants' Ins. Co.* 6 *H. & J.*, 408, *Allegre vs. Md. Ins. Co.* 5 *G. & J.*, 159, *Md. Ins. Co. vs. Bathurst.*

The question of waiver is for the jury, 25 *Wend.*, 381, *McMasters, et al., vs. The Westchester Mutual Ins. Co.*, and therefore the evidence was properly admitted, as it, at least, tended to prove a waiver. But it may be said that there could be no waiver at the time of that conversation, because it was then too late to have supplied the defect if any had been pointed out. The Court of Appeals have an *obiter dictum* to that effect in 3 *Gill*, 186, *Edwards vs. Balto. Ins. Co.* But it will be observed, that in that case the loss occurred in November 1839, and the alleged waiver was, by letter of the president, on the 3rd of March 1840, a period of four months, as applied to a case where all the parties, insurers and insured, resided in Baltimore, though the goods were burnt in the country at a considerable distance. In the present case the fire was on the 20th of March 1849, at Winchester, Virginia, where the plaintiff resided; the preliminary proof was delivered at defendant's office, in Philadelphia, a few days afterwards, and the alleged waiver was in the conversation occurring on the 4th of May 1849, that is one month and some fifteen days after the loss. Now it is expressly said in the same case, in 3 *Gill*, 187, 188, that the condition requiring

2    v.9

notice to be "forthwith" given, signifies simply "due diligence under all the circumstances of the case," and that "is a question for the jury." And we refer on this point also to 9 *Wend.*, 163, *Cornell vs. Le Roy*. In the case above cited, from 9 *How.*, 403, the preliminary proof was not furnished until nine months after the loss, and yet a waiver at that time was held sufficient. It was not then too late for this plaintiff to have supplied the defect in his preliminary proof if disclosed to him.

But it is said, that the declarations of the president to Lavender reserved any existing defect in the preliminary proof, by referring him to the policy for the proof necessary. To this we answer:—*First*, that as yet no specific defect has been shown by the company, but every presumption arises against them by the suppression of the papers. 4 *How.*, 246, *Clifton vs. The United States*. *Secondly*, that the policy could not determine wherein the proof already furnished was defective, unless the defect should be pointed out or the proof returned to the plaintiff, that he might compare it more carefully with the terms of the policy. Lavender enquired what "further proof was necessary" The reference to the policy could not elucidate the enquiry, nor could the company retain the proof furnished and at the same time require proof *de novo*, because if such a demand had been assented to and full preliminary proof furnished as of the 4th of May 1849, it would enable the company to raise the question of tardiness in the proof. The plaintiff tendered himself ready to cure any defects in form, and is insultingly told to go and prepare his papers over again, and this a month and-a-half after the proof, such as it was, had been furnished, and while the defendant perversely held the papers and superciliously refused to point out to the witness or to the court on the trial any defect whatever in the proof so promptly furnished. *Thirdly*, that it is manifest from the evidence of Lavender that the president had discovered no defect in the proof, as he declared there were several printed forms of policies in the office, and he did not even know which one to give to Mr. Lavender as applicable to the plaintiff's policy. It is therefore plain and palpable that the presi-

dent was not at that time aware of any existing defect, and had discovered none, nor has he yet proved there was any defect of form. On the contrary, this company refuses to furnish the papers in their possession, and then say that the plaintiff must prove that these papers are not defective. The exception went on the ground of want of authority in the president, but, *non constat*, that if necessary we could not have afterwards shown the authority to make these declarations, the order of the proof being with the party offering it. But the authority of the president must be presumed: 'we find that waiver of preliminary proof has always been allowed on the declarations of presidents of insurance companies. *Angell on Ins.*, sec. 243. 6 *Cush.*, 342, *Clark vs. New Eng. Ins. Co.* And in 3 *Gill*, 186, the court clearly imply that the president had authority to make the waiver if his letter had in law amounted to such a waiver.

2nd. The second exception brings up the 2nd, 3rd, 4th and 6th prayers, which were rejected. The second prayer was properly refused, because it assumes as its basis, first, that there is a total failure of evidence to show the furnishing of the preliminary proof, and, secondly, a total failure of evidence tending to show a waiver of such proof. If either ground assumed in the prayer is untenable, the court will not reverse the ruling of the court below. But we insist that both grounds taken are untenable, as shown by our observations and authorities cited on the first exception. We have shown that the question of waiver was for the jury, and it was therefore a vice in the third prayer to instruct the jury that it was no waiver. But the prayer was moreover vicious in requiring special proof of authority to the president, as also shown in our argument on the first exception. The fourth prayer is also erroneous, because it proceeds upon the ground that the refusal of the defendant to produce the papers furnished by the plaintiff was not a circumstance from which, with other proof in the cause, the jury could presume that the suppressed papers contained the preliminary proof. But the court will find that such non-production will, in special cases, give rise to a presumption in "*odium spoliatoris*," and the law will

presume that the papers withheld would make out the case of the adversary. Now this is not the case of the non-production of the defendant's own papers or documents, but it is the case of papers left by the plaintiff with the defendant for its action. If the defendant refused to allow the claim, the plaintiff had, at least, an interest in having access to his own papers that he might prove on the trial their contents. It is rather like the case where there is but one instrument between the parties, and the production of which is necessary to the plaintiff's case, and where the court will on motion order the production of papers. 1 *Greenlf. on Ev., sec.* 559. But here the papers were left at defendant's office in Philadelphia, and there was no power in the court to compel a foreign corporation to produce a document not in the jurisdiction. Surely this is sufficient, under all the circumstances, to raise the most unfavorable presumption against this corporation when refusing to produce papers in which the plaintiff has a common interest, if not exclusive property. It is not the case of a mere bailee of papers refusing to return them to the true owner upon notice, and it is not in principle the same as the celebrated case of the goldsmith, refusing to produce a precious stone bailed to him for a specific purpose. 1 *Strange,* 505, *Armory vs. Delamirie.* Suppose a corporation withholds a partnership book or document, and will not produce it on notice, will the court presume nothing against it, but require strict proof of its contents? And here is the case of an insurance company receiving the plaintiff's papers for examination and for its decision on the claim. It refuses to pay, withholds the papers on notice, and yet insists that if produced they would appear to be defective. Truly it would be strange if the law held out a premium to parties thus to defeat the ends of justice and the attainment of the truth. In a case where the owners of the aggressive ship failed to produce a letter written to them by the master of the damaged ship, it was presumed that the letter contained an admission of the damage. 3 *Greenlf. on Ev., sec.* 408, and 1 *Do., sec.* 37, and especially 4 *How.,* 246. 'The 6th prayer was equally defective if the above views expressed by us are correct, so far as we have considered the question of waiver.

3rd. The third exception is nothing more, as shown on its face, than an offer to rule out secondary evidence after a notice duly served to produce the primary, and after the secondary had been given to the jury without objection, and after the prayers had been framed on it by the defendant itself. It is therefore respectfully submitted, that the judgment must be affirmed.

Eccleston, J., delivered the opinion of this court.

Whether there was error in refusing to grant the second prayer of the defendant, contained in the second bill of exceptions, we propose first to consider; and in doing so the plaintiff will be allowed the full benefit of all the testimony of his witnesses, Hammond and Lavender. For which purpose the correctness of the decisions below, in regard to the first and third bills of exceptions, will be conceded, without, however, deciding whether they were correct or not.

The prayer alluded to asks the court to instruct the jury, "that there is no evidence in this cause that such preliminary proof of loss, as required by the 9th condition of policy, was furnished by said Evans before the institution of this suit, and that there is no evidence that such preliminary proof of loss was waived by defendant, and that the plaintiff is not entitled to recover in this suit."

The following is the language of the 9th condition of the policy: "Persons sustaining any loss or damage by fire, shall forthwith give notice thereof in writing to the company, secretary or agent. And as soon after as possible, they shall deliver as particular an account of their loss and damage as the nature of the case will admit, signed with their own hand. And they shall accompany the same with their oath or affirmation, declaring the said account to be true and just; showing also whether any and what other insurances have been made on the same property; what was the whole value of the subject insured; in what general manner (as to trade, manufactory, merchandize or otherwise,) the building insured or containing the subject insured, and the several parts thereof were occupied, at the time of the loss, and who were the occupants of

such building, and when and how the fire originated, as far
as they know or believe.   They shall also produce a certificate
under the hand and seal of a magistrate or notary public most
contiguous to the place of the fire, and not concerned in the
loss, stating that he has examined the circumstances attending
the fire, loss or damage alleged, and that he is acquainted
with the character and circumstances of the insured claimants;
and that he verily believes that he, she or they, have, by mis-
fortune, and without fraud or evil practice, sustained loss and
damage on the subject insured, to the amount which the mag-
istrate or notary public shall certify.   And until such proofs,
declarations and certificates are produced, the loss shall not be
payable.''

In reference to the preliminary proof thus required, the
plaintiff examined G. W. Hammond, who says: "It was, I
think, on the 22nd of March 1849, two days after the fire,
that I went to Baltimore.   In compliance with the request
of Mr. J. P. Riley, I called, on the 23rd, the day after my
arrival, at the office of Mr. Lovegrove, agent for this company,
to present certain papers and to arrange the settlement of the
loss.   I was informed by a person who I took for the clerk of
Mr. Lovegrove, that he, Mr. Lovegrove, was in the country
and would not be in until late in the evening.   I left with
the clerk for Mr. Lovegrove's inspection the papers sent by
Mr. Riley, among which were a notice of the loss and a
transfer of the policy to Mr. Riley.   I accordingly called again
on the following day and found Mr. Lovegrove in the office.
I cannot now remember all that passed in conversation be-
tween Mr. Lovegrove and myself, but this I remember, that
he declined taking any step in the matter, returned me the
papers I had left for his inspection, and referred me to the
office of the company in Philadelphia, giving as a reason for
this that the company was about to close and discontinue the
agency in Baltimore.   I went to Philadelphia the following
day, I think, and soon after my arrival I called at the office
of this company, saw, I think, the president and secretary of
the company, stated what had passed at the office of their
agency in Baltimore, and presented the papers of Mr Riley.

I was informed by the president that their board would meet on a certain day, and then the matter would receive proper attention, but until then nothing could be done. As this day would not arrive until after my departure, I requested him to report the action of the board to Mr. Riley, which he said he would do."

If this testimony is the only evidence on which the plaintiff can properly rely to show a compliance with the 9th condition of the policy, the defendant certainly had a right to ask the court to instruct the jury there was no evidence that such preliminary proof as the policy required had been furnished; for the witness, Hammond, in speaking of the papers which he took to the agent in Baltimore, and afterwards to the office of the company in Philadelphia, does not profess to give the contents, or to speak of the character, of any of them, except that he says, "among them were a notice of the loss and a tranfer of the policy." Instead of making legitimate and reasonable inferences, a jury would be travelling in the fields of conjecture and wild speculation were they to find upon such proof as this that not only the notice of the loss but the other requirements of the 9th condition had been complied with.

But in aid of the testimony of this witness the plaintiff relies upon that of Mr. Lavender. The conversation of the president of the company with this witness is supposed to be a tacit admission, that there was no objection taken to any defect in the preliminary proof furnished to the company, through the agency of Hammond. Let us see with what propriety such a supposition is entertained. The witness had called to know why the loss had not been paid, stating at the time if there was any deficiency in the proof he would try to supply it. The person, representing himself as president of the company, said they had sent an agent to Winchester, and from his information they did not believe there could have been so much stock in a little room 10 by 12 feet. The witness denied the correctness of the information given by the agent, and then enquired what further proof was wanted? The president replied "the policy will show that;" or "it is laid

down in the policy." The witness asked for a blank policy, but none was furnished, the president stating they had several forms of policy, and he did not know which one was used in this case. Thus it will be seen, that after speaking of the difference of opinion in regard to the size of the room and the quantity of goods it contained, Mr. Lavender wished to know what further proof was required, and he was answered, by being told the policy will show that, or it is laid down in the policy. The enquiry was not whether any further proof was required, but what further proof? and the answer being as already stated, to such a question, so far from being a tacit admission, that there was no objection taken to any defect in the preliminary proof, it was in truth just the reverse, and amounted to an assertion that further preliminary proof was necessary; for if none was required the policy could not possibly show what further proof was required; and if it could show that further preliminary proof was necessary, then the conversation was not a tacit admission of there being no objection to any deficiency in the proof.

The following notice to the defendant was served upon its attorney: "Take notice, that on the trial of the above cause you are required and notified to produce the written notice of loss by fire, sent to you by the above plaintiff, and left with you in Philadelphia shortly after said fire, as also the account of the particulars of the plaintiff's loss by said fire, accompanied and verified by his affidavit, and the certificate of a magistrate or notary public, certifying his opinion of the amount of said loss by fire, and that the same was occasioned without fraud or evil practice, which said last two papers were also delivered to your company, shortly after said fire, and before this suit." Because the defendant neither produced the papers mentioned in this notice or gave any excuse or reason for not producing them, the plaintiff insists that such conduct on the part of the defendant, in connection with the other proof in the cause, authorized the jury to presume that the papers contained the necessary preliminary proof. But the position here assumed is not sustained by the authorities. In such a case as this the non-production of the papers has

no other *legal* effect than to allow the opposite party to prove their contents. The refusal to produce does not authorise any inference against the party refusing. *Cooper vs. Gibson, 3 Camp. Rep.*, 363. *Lawson & another, Assignees of Shiffner, vs. Sherwood,* 1 *Stark. Rep.*, 314, in 2 *Eng. Com. Law. Rep.*, 405. 1 *Greenlf. on Ev., secs.* 37, 560. *Evans' Pr.*, 293. *Roscoe on Ev.*, 6.

The plaintiff's attorney, however, seems to consider his view of this question fully sustained by the case of *Clifton vs. The United States, 4 How. Rep.*, 246. But the unfavorable inference there allowed against the party for not producing the papers was under very different circumstances from the present. There it was contended on the part of the United States, that the goods in question had been forfeited by the claimant in consequence of his having fraudulently imported them. And the court below, under the 71st section of the act of 1799, (as the Supreme Court say they had a right to do,) "had pronounced the proof sufficient to establish the offence, unless explained or rebutted by opposing evidence."

The counsel for the government, with a view of further strengthening their cause, and in pursuance of previous notice for that purpose, called upon the claimant for the production of his books and papers having relation to the importation of the goods. But neither the books or papers were produced, or any account given for the non-production. And on page 246 it is said: "Probable cause for the prosecution having been thus sufficiently established, the claimant went into his defence, and instead of furnishing evidence of the prices actually paid by him to the houses abroad from whom the goods were purchased, as he might have done, either by executing a commission to take their testimony, or by persons concerned in making the purchases, or by the production of the books of account that had been called for, as the call afforded him an opportunity to put them in evidence, he placed the defence altogether upon the judgment and opinions of merchants and other persons acquainted with this description of goods, as to the value and cost of the article in the home market, tending

3    v.9

thereby to confirm and support the correctness of the valuations as fixed in the invoices.''

In the instructions given below it was stated: ''That the claimant knew from whom he had bought the goods, and what was their actual cost, and yet had not produced the testimony, or accounted for its absence; that to withhold testimony which it was in the power of the party to produce, in order to rebut a charge against him, where it is not supplied by other equivalent testimony, might be as fatal as positive testimony in support or confirmation of the charge. And that if the claimant had withheld testimony of his accounts and transactions with these parties, (meaning the foreign houses from whom he had purchased the goods,) the jury were at liberty to presume that, if produced, they would have operated unfavorably to his case.''

It is evident that the Supreme Court affirmed these instructions, because they were given at a stage of the case when probable cause for the prosecution had been established, and the *onus* of exonerating himself from the charge by proof was therefore cast on him. And a very serious charge it was, involving in its result not only the loss of considerable property, but loss of character also, being accused of violating the revenue laws of the country, by means of frauds and perjuries.

On page 247 the court use this strong language: ''Under these circumstances the claimant was called upon by the strongest considerations, personal and legal, if innocent, to bring to the support of his defence the very best evidence that was in his possession, or under his control. This evidence was certainly within his reach, and probably in his counting-room, namely, the proof of the actual cost of the goods at the place of exportation. He not only neglected to furnish it, and contented himself with the weaker evidence, but even refused to furnish it on the call of the government, leaving, therefore, the obvious presumption to be turned against him, that the highest and best evidence going to the reality and truth of the transaction would not be favorable to the defence.''

Now in the case before us there was no obligation on the defendant to show any defect in the preliminary proof, until

Spring Garden Mutual Ins. Co. *vs.* Evans, use of Riley.

the plaintiff had first made out a *prima facie* case of compliance with the requirements of the policy on that subject, which we think has not been done. The decision, therefore, in *Clifton vs. The United States*, cannot with propriety be applied to the present question. In truth that decision only recognizes the principle, that when a party under an obligation to sustain his defence by proof, has in his possession important evidence on the subject and fails to produce it, but attempts to establish his defence by evidence of inferior character, it authorises an inference that he does not furnish the best, because it would injure, instead of benefitting, his cause. And we see no reason for doubting the correctness of the position, already stated upon the authorities referred to, that the present failure to produce the papers under the notice only allowed the plaintiff the right to prove their contents.

After a careful consideration of all the circumstances, we are brought to the conclusion that the first proposition contained in the defendant's second prayer is right; and that the court ought to have instructed the jury there was no evidence in the cause that such preliminary proof as the 9th condition of the policy required, had been furnished by the plaintiff before the institution of the suit.

The prayer also contains the proposition, that there was no evidence that the preliminary proof of loss was waived by the defendant, which, in our opinion, is also correct.

The conversation between Mr. Lavender and the president is the proof which is relied upon to establish a waiver. But we suppose what has been said in reference to that conversation is sufficient to show, that instead of considering it as any proof of an implied waiver, it is a negation of any such implication.

The counsel of the plaintiff, however, says the court were right in refusing the prayer, because, whether there was a waiver or not, was a question for the jury, and not for the court.

In *Edwards vs. The Baltimore Fire Insurance Co.*, the plaintiff prayed the court to instruct the jury, "that if they believed the facts set out in the foregoing statement, the de-

fendants have waived the adduction, by the plaintiff, of the preliminary proofs required by the conditions annexed to said policy of insurance, and that such waiver dispenses the plaintiff from now offering evidence of his having furnished the same." Which prayer the court refused, and the decision was affirmed. 3 *Gill*, 185. Now if the doctrine contended for by the counsel for the present plaintiff is correct, with reference to the circumstances of this case, it is reasonable to presume the late Court of Appeals would have placed their affirmance of the decision just referred to, upon the ground that the prayer presented a question to the court, which was exclusively for the consideration of the jury; but they give not the least intimation of their entertaining such an opinion. On the contrary the court enter into an argument to show that if the letter, supposed to create the waiver, could be so construed, it could be of no avail to the plaintiff, because at the date of the letter it was too late to supply any defect in the preliminary proof. And then, on page 187, they decide the letter not to be a waiver, without intimating a doubt of their authority to treat the question as one of law.

Where all the facts and circumstances relating to the subject are admitted, in our opinion a party has the right to ask the court to inform the jury whether the evidence is sufficient to establish a waiver. Here there is no conflict of testimony, the proof being all on one side; and the prayer is such that it necessarily concedes the truth of all the plaintiff's evidence, and all legitimate inferences which may be drawn from it. That such is the necessary concession of the prayer, may be seen by referring to *McElderry vs. Flannagan*, 1 *H. & G.*, 320, where it is said: "Before the court could legally give the instruction prayed for by the appellee, they must admit the truth of the testimony offered by the appellants, and of the testimony given by the appellee, which may operate in the appellants' favor, and the existence of all material facts reasonably deducible therefrom, even though contradicted in every particular by the testimony on the part of the appellee." See also *Cole vs. Hebb*, 7 *G. & J.*, 26, and *Guy vs. Tams*, 6 *Gill*, 86.

In the absence of evidence to show that such preliminary proof as the policy made necessary had been furnished, and no waiver of that proof having been established, the plaintiff, of course, had no right of action, and therefore the second prayer should have been granted.

From the views already expressed it is evidently proper, in our opinion, that the decision below should be reversed, because the defendant's fourth and sixth prayers were refused.

Having thus settled the important questions involved in this controversy, we suppose it unnecessary to express any opinion in regard to the other matters referred to in the argument.

*Judgment reversed and procedendo ordered.*