THE SPRING GARDEN MUTUAL INSURANCE COM-
PANY vs. RANDALL EVANS, use of J. P. RILEY.

An affidavit was recognised by the witness as in his handwriting, but it
was made at the recommendation of one of the parties, and not until
nearly *five months after* the transactions of which it speaks occurred.
HELD: That the witness could not be permitted to testify to his belief
of the correctness of the facts set forth in it.

To allow a witness to refresh his memory by looking at a memorandum, it
must have been made *at the moment*, or *recently after* the fact, but if made
*weeks* or *months* thereafter, he will not be permitted to do so, nor if made
at the recommendation of one of the parties.

APPEAL from the Superior Court of Baltimore city.

*Covenant* brought on the 8th of September 1849, by the
appellee against the appellant upon a fire insurance policy
issued by the appellant to Evans upon a stock of goods and
shop fixtures in a store in Winchester, Virginia. Plea *non
infregit.*

This is the second appeal in the case. The former appeal is
reported in 9 *Md. Rep.*, 1, she loss by fire occurred on the
20th of March 1849, and on the next day Evans assigned
the policy to Riley. The policy contains the usual clause
relating to preliminary proof. The plaintiff alleged that
such proof was furnished, and served notice upon the defend-
ant to produce the papers relating thereto, which had been
left with the company in Philadelphia shortly after the fire.
At the trial under the *procedendo*, several exceptions were
taken, parts of which only need be stated.

*1st Exception.*—For the purpose of introducing secondary
evidence of the papers referred to in the above notice the
plaintiff called Geo. W. Hammond, who proved that on the
second day after the fire, he was in Winchester, and being
about to proceed to Baltimore, he received a package of pa-
pers from Riley, who requested him to deliver them to the
defendant's agent, in Baltimore, who issued the policy. Wit-
ness did so, but the Baltimore agent declined to take any ac-
tion in the matter and requested witness to take them to the
defendant in Philadelphia. Witness then proceeded to Phil-

DECEMBER TERM, 1859. 55

Spring Garden Mutual Ins. Co. vs. Evans, use of Riley.

adelphia and handed the papers to a person to whom he was introduced as the president of the company at its office there, and by whom he was told the matter should be laid before the board of directors and the result communicated to Riley. Witness said he did not read any of the papers and does not recollect any of their contents, but they were in the hand-writing of Mr. Carson of Winchester, who was an agent for an insurance company. The plaintiff then for the purpose of refreshing the memory of this witness, offered to place in his hands, to be read by him, the following paper, dated Winchester, written, signed and sworn to, before a justice of the peace, by the witness, on the 18th of August 1849, the day of its date:

"At the request of James P. Riley, I make the following statement, to the best of my knowledge, recollection and belief, of the facts and occurrences spoken of. On the ⸺ of March last, I went to Baltimore from this place, and the property of Randall Evans having been destroyed by fire two days before, I took with me at the request of the said J. P. Riley, certain papers connected with the assurance of the said Randall Evans in the Spring Garden Company of Philadelphia, to lay before the Baltimore agent of said company. These papers consisted of the policy of insurance, the assignment of said policy to the said James P. Riley, the affidavit before a magistrate of said Evans, to the effect that his loss by said fire exceeded the sum of $1500, the amount insured, and certificate of the acting magistrate to the good character of said Evans, and his opinion that said loss did so exceed said amount, and also a letter from said Riley to Mr. Lovegrove, the said agent. On the day after my arrival in Baltimore, I called at the office of said agent and was informed by his clerk that he was absent and would not return till late. I called the following day, saw Mr. Lovegrove, the agent, presented the letter from Mr. Riley and laid before him the aforesaid papers. He carefully inspected them, said they were in order, but remarked that as the Baltimore agency was (or would soon be) withdrawn, he would prefer, as I was going to Philadelphia, my laying the papers before the

mother institution there, to which I assented. His clerk then by his directions, sealed all the papers (together with the letter from said Riley to said agent) in an envelope, directed to the president of the institution in Philadelphia. Shortly after my arrival in Philadelphia, I presented this package at the office of the Spring Garden Company, to a person I suppose to be a clerk, who opened it and requested me to wait a short time, when the president (I think) would be in. The person referred to soon arrived with whom I had some conversation respecting the fire, &c. He examined the papers, said they were in form, and named a day when their board would meet and when the matter would be considered, and when the said James P. Riley, the assignee of said Randall Evans, would be informed of the result."

The defendant objected to the placing of this paper in the hands of the witness, to be read by him, but the court (Lee, J.) overruled this objection and permitted the same to be placed in the hands of the witness, and to be read by him, for the purpose of refreshing his memory. To this ruling the defendant excepted.

*2nd. Exception.* The witness having then read and identified the paper, and the body of it, as in his handwriting, and having stated that he now recollects having made this affidavit when the facts of the transaction were fresh and recent, the plaintiff proposed to ask him whether or not upon reading the same he can state from recollection the contents of the papers left by him in Philadelphia? The defendant objected to this question, but the court allowed it to be put, and to this ruling the defendant excepted.

*3rd. Exception.* The witness having answered the question mentioned in the preceding exception, by saying that he had no recollection of the contents of said papers, the plaintiff then proposed to ask him this question: On reading the affidavit, can you, or can you not, say, that what you then stated therein, you then knew to be true? The defendant objected to this question, but the court allowed it to be put, and to this ruling the defendant excepted.

*4th. Exception.* The witness then, in reply to the ques-

tion mentioned in the preceding exception, said that what he stated in said affidavit he then knew to be true, and now believes to be true. To this answer the defendant objected, but the court permitted it to go the jury as evidence, and to this ruling the defendant excepted.

*5th. Exception.* The plaintiff then offered to read to the jury in evidence said affidavit. To the reading thereof, as evidence, the defendant objected, but the court allowed the same to be so read, and to this ruling the defendant excepted.

*7th. Exception.* After the evidence had been closed, several prayers were offered by the defendant, only one of which, the 3rd, need be stated, viz:

That there is no evidence in this cause that such preliminary proof of loss as is required by the 9th condition of the policy was furnished by the defendant before the institution of this suit.

To the rejection of this, with other prayers, the defendant excepted. The verdict and judgment were in favor of the plaintiff, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Chas. H. Pitts* for the appellant.

The several exceptions in relation to the testimony of the witness, Hammond, show that in his examination-in-chief, when first called to the stand, he stated that he did not read any of the papers and did not recollect any of their contents. For the purpose of refreshing his memory, the affidavit was placed in his hands and he was allowed to read it. He identified the paper as in his handwriting, and then said he now recollects having made such an affidavit when the facts of the transaction were fresh and recent. He was then asked whether, on reading this affidavit, he can state from recollection the contents of the papers? To this he replied that he had no recollection of the contents of the papers. He was then asked, "on reading the affidavit, can you, or can you not, say, that what you then stated therein you *then* knew to be true?"

To this he replied, that what he stated in the affidavit he then knew to be true, and *now believes to be true.* The affidavit was then suffered to be read to the jury as *independent testimony.*

Now, apart from all other objections to these several rulings of the court below, it is sufficient to say that this affidavit was made at the *request* of Riley, the assignee of the policy, on the 18th of August 1849, *nearly five months after* the fire, *and after* the transactions which it professes to recount occurred. The rule of evidence in such cases is well settled, that the memorandum must be made *at the time* of the transaction or *recently* thereafter, otherwise it is not admissible as evidence, and cannot be placed in the hands of the witness for the purpose of refreshing his memory. This is stated in 1 *Greenlf. on Ev.*, sec. 438, and clearly decided in the case of *O'Neale vs. Walton,* 1 *Richardson,* 234. In the case of *Good vs. Martin,* 14 *Md. Rep.*, 398, the memorandum was made either *on the day* of the transactions or *within a week thereafter.* Here, however, *it was not made until* nearly five months thereafter, and to admit this memorandum would be to relax the rules of evidence to a most dangerous extent; for if there is once a departure from the rule, that the writing must be *contemporaneous* with the transaction, and *five months* be allowed a witness within which to write down his recollections of the facts, it might, with equal propriety, be extended to six, ten or twelve, or even years afterwards.

On the former appeal in this case, it was decided that the refusal to produce the papers upon notice did not authorize any presumption or inference against the defendant, but simply enabled the plaintiff to give secondary evidence of their contents. If the above position, in regard to the testimony of Hammond, be correct, and the evidence is inadmissible, it follows that no evidence of the contents of these papers was before the jury, and, consequently, no preliminary proof of the loss, as required by the policy, is in the case. The appellant's third prayer was, therefore, improperly rejected, and the judgment must be reversed without a *precedendo,* for the furnishing of such preliminary proof is a condition upon which the

Spring Garden Mutual Ins. Co. *vs.* Evans, use of Riley.

right of action upon the policy accrued, and on the former appeal it was decided, upon the same evidence now before the court in the present record, that there had been no waiver by the defendant of such proof.

*Jno. P. Poe* for the appellee.

On the former trial the plaintiff traced certain documents, or preliminary proof of the loss, into the possession of the defendant, and having served a notice to produce, claimed that it was competent for the jury to infer the contents to be as claimed by the plaintiff, but this court refused to allow such inferences in that state of case. On the second trial the plaintiff undertook to give secondary or inferior evidence of the contents of these documents. The defendant claims that the party offering secondary evidence of the contents of documents in its possession, after notice to produce, is held to all the stringent rules of evidence. The plaintiff, however, insists that, in such a case, these rules of evidence ought to be relaxed; that the withholding of the papers was a suspicious circumstance, from which the jury may infer that, if produced, they would operate against the party refusing to produce them; that in such a case the secondary evidence need not be so strong as in ordinary cases of lost instruments, and that if the secondary evidence be vague or uncertain, every presumption shall be against the party withholding the higher evidence after a notice to produce.

The exceptions taken at the present trial, turn, principally, on the sufficiency of the secondary evidence of the contents of these papers. The first five exceptions are but successive phrases of the one substantial proposition, *viz:* cannot a cotemporaneous affidavit of facts within the knowledge of the deponent be read in evidence to the jury when verified by the witness who made it, as a cotemporaneous statement which he *then knew to be true,* and when the witness cannot revive his recollection after looking at the document thus verified ? If it were an entry made in the course of business, and the witness is dead, or fails to remember, all the writers agree that it can be read, but we cannot perceive, in the in-

terminable confusion of the American authorities, a sensible difference between such an entry and a memorandum made, *bona fide*, by a disinterested party, as a faithful statement of matters passing through his hands which he then distinctly remembered, but in the long flight of years cannot recall, though he can authenticate, by his oath, the memorandum to be one which he knew to be true at the time. Indeed, we should think the document, thus verified, to be much better evidence than the dim recollections which may revive by its perusal.

If the witness, Hammond, had a recollection of the contents of the papers after reading his affidavit, that recollection thus refreshed would clearly be evidence, because this affidavit is *ante litam motam*, and is sufficiently cotemporaneous with the delivery of the documents by the witness. 1 *Greenlf. on Ev., secs.* 438, 436. But where the failure of the witness's memory deprives us of the benefit of his refreshed recollection, we still possess his verification of the document itself as a then faithful record, now recollected to have been correct at the time. Surely this is better and more credible evidence than a recollection feebly refreshed. But this court has recently, in the case of *Good vs. Martin*, 14 *Md. Rep.*, 398, had this subject under consideration and adopted the rule, sanctioned both by reason and justice, that where the witness neither recognises the memorandum as having been seen by him before, nor awakens his memory to the recollection of anything contained in it, but, nevertheless, *knowing the writing to be genuine*, his mind is so convinced that he is, *on that ground*, enabled to *swear positively to the fact*, the testimony will be received. To that authority and the *cases there cited*, we confidently refer, as settling the question now before the court. Among the cases thus referred, the court's particular attention is called to 3 *Rhode Island*, 132, *State vs. Colwell*, and 3 *Foster*, 471, *Watson vs. Walker*.

If we are right in the position, that the evidence of Hammond, and his affidavit, was properly admitted, there was no error in the rejection of the defendant's third prayer, because

there was proof from which the jury could infer, that the 9th, condition of the policy, as preliminary proof, had been complied with. Where there is any evidence, *even if slight*, yet tending to pave the issue, a prayer that there is *no* evidence must be rejected. 9 *Gill*, 331, *Belt vs. Marriott*.

*Note*.—The argument on other points is omitted.

LE GRAND, C. J., delivered the opinion of this court.

This case was before this court at June term 1856, and the decision then given must control the one now to be made, the record not having been materially altered as to its facts. We regret this because, there is nothing appearing in the evidence from which we can infer there had been any concealment or fraud on the part of the insured or his assignee. But this case, like all others, is to be made out by legal evidence, and this, in our opinion, has not been done.

At the former trial it was held by this court, that there was no waiver of preliminary proof, and that the refusal of the defendant, after notice to do so, to produce the papers left at its office with its president, in Philadelphia, did not authorize any inference against the party refusing; that its only legal effect was, to allow the opposite party to prove their contents. 9 *Md. Rep.*, 17.

We consider it unnecessary to pronounce upon each of the exceptions, because the recovery of the plaintiff depends on the affidavit of George W. Hammond, of the 18th day of August 1849, and the testimony of Hammond in regard to it. If the testimony was inadmissible, then, the third prayer of the defendant was improperly rejected.

Much has been written and decided as to the use which may be made of memorandums in relation to the matter inquired of at the trial, and great difference of opinion expressed. In the case of *Martin vs. Good*, 14 *Md. Rep.*, 398, decided at the June term 1859, this court adopted the rule, as it had been relaxed from its former strictness by some of the courts of this country.

In that case a paper containing the terms of a settlement.

between partners, was placed in the hands of a witness to refresh his memory.    The witness recognized the paper as in *his* handwriting, but did not remember where or when he wrote it, though he thought it was on the day of the settlement, and it must have been within a week thereafter.    His memory was not refreshed, by reading the paper, so as to enable him to recollect the amount of accounts taken, or the particular debts assumed by each partner, but from the fact of its being in his handwriting, he had no doubt it did contain the true terms of the agreement made in his presence, and each and all the terms of the contract, as stated in the paper.    This testimony was admitted, the court holding, that where the writing is neither recognized by the witness as one which he remembers to have seen before, nor awakens his memory to the recollection of anything contained in it, but, nevertheless, knowing the writing to be genuine, his mind is so convinced that he is, on that ground, enabled to swear positively to the fact, the testimony will be received.

In the case now before us, the fire took place on the 20th March 1849, and the affidavit of the witness was made on the 18th day of August of the same year, nearly five months thereafter.    The paper is in the handwriting of the witness, recognized by him as such; and the question is, whether after such a lapse of time, the witness may be permitted to testify to his belief of the correctness of the facts set forth in it? We think not.    In the case of *O'Neale vs. Walton*, 1 *Richardson, S. C. Rep.*, 234, the court review and explain the case of *State vs. Rawls*, 2 *Nott. & McCord.*, 332, and decide that, in order to allow a witness to refresh his memory by looking at the memorandum, it must have been made at the moment, or recently after the fact, but if made weeks or months thereafter, he will not be permitted, nor, if made at the recommendation (which is the case here) of one of the parties. We adopt this interpretation, and, in doing so, must reverse the judgment.    In 9 *Md. Rep.*, 18, it was said, "there was no obligation on the defendant to show any defect in the preliminary proof until the plaintiff had first made out a *prima*

*facie* case of compliance with the requirements of the policy." It may be, that this can be done, and, therefore, the plaintiff will be allowed, at any time, during this term, to move for a *procedendo*.

*Judgment reversed.*

(Decided February 24th, 1860.)