# Dodge *versus* Bache.

1. A question in a case was whether an agent of the defendants had cut slash-boards on a dam. Evidence had been given that he had been seen on the dam about the time they had been cut. His declarations that he intended to cut the dam, although made at a different time, were evidence in corroboration against the principal.

2. It had been testified that Grinnell had been seen on the dam at a particular time. He testified that he then had been in the employment of Dickinson. It was proper for Dickinson to state that from entries in his book in his own handwriting, he believed Grinnell had worked for him then.

March 10th 1868. Before STRONG, READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Tioga county:* No. 326, to January Term 1868.

This was an action on the case, by John N. Bache against William E. Dodge and others, commenced May 4th 1860, to recover

[Dodge *v.* Bache.]

for the loss of a quantity of logs, belonging to the plaintiff, alleged to have been carried away by a freshet occasioned by the opening of a dam of the defendant.    The case was tried before Streeter, P. J., of the Thirteenth Judicial District.

The plaintiff gave evidence that the defendants carried on the lumbering business at Manchester Mills on Pine creek and at other mills on Marsh creek, which empties into Pine creek.    The dam was built across Marsh creek and was raised about four feet above the dam proper by slash-boards; that W. W. McDougall was the general agent of the defendants in the summer or fall of 1855, had come in 1853 and left in 1856; he gave evidence further that he had logs in the stream ·below the defendants' dam which had been carried away by a rise in the stream; also evidence tending to show that the rise was occasioned by the cutting of the slash-boards of defendants' dam.    A witness of plaintiff testified that he had driven some of the plaintiff's logs to the boom at Williamsport, where he got them sawed for the plaintiff, that there were about 170,000 feet sawed.    The principal question was whether the boards had been cut by McDougall, the agent of the defendants.    A witness testified that she had seen McDougall and Charles Grinnell go together to the mill and saw Grinnell on the dam with an axe apparently chopping ·something; that it was in December 1855 that McDougall and Grinnell were thus seen on the dam; there was evidence that the dam was cut in the fall or winter of 1855.

The plaintiffs then offered to prove by Ezra Chandler, "that some time in the fall and winter of 1855, and before the dam was let off, McDougall told the witness that he wanted the witness to put in some logs that were lying at the Strap Mill, that were scattered along the edge of the creek at a former floating, and said he was going to float them through to the Manchester Mills before the creek froze up; and said he was going to cut the slash at the Marsh creek pond to float them through, and that the logs were so put in by him for that purpose."

The defendants objected, that declarations of an agent were not evidence against the principal unless made at the time the act was done; and that a principal is not to be affected by the declarations of an agent as to his intentions.    The evidence was admitted and a bill of exceptions sealed.

Charles Grinnell testified for defendants that he worked for McDougall two or three weeks in October and the 1st of November 1855; he then went to John Dickinson's to work, in the fore part of November, and worked there till February 1856.

The defendants offered to prove by John Dickinson, "that he settled with Charles Grinnell on the 16th day of February 1856, and credited him that day with sixty days' work, in full to this date, at 6s. per day.    That on the 2d day of November 1855, he

[Dodge v. Bache.]

paid him $5, which he charged in his book, and which he believes was for work. Also, on the 14th December 1855, $5. Also, on the 24th December 1855, $2. Also, on the 2d February 1856, $10. On the 7th February 1856, $7. All which payments were on the same account, and were allowed to Grinnell in the settlement for said sixty days' work. That said Dickinson believes from the said entries in his books, in his own handwriting, that said Grinnell worked for him between November 2d 1855 and the date of the settlement." Also, " that on the 22d day of August 1855, all accounts between the witness and Charles Grinnell were settled and balanced on the books of witness; that on the 2d November 1855, a new account was opened on the books of the witness, in his own handwriting, and carried along on said books until the 16th day of February 1856, when it was settled in full; and, that during the running of said account the said Charles Grinnell was credited with sixty days' work in full to date, by the witness; and that the witness, having refreshed his recollection from an examination of the books and entries therein, in his own handwriting, believes that the said Grinnell worked for him between the said dates."

Both these offers were objected to by the plaintiff, rejected by the court and bills of exception sealed.

The court charged, amongst other things: " But if you find that McDougall or some of his men let off the water, then you should find for the plaintiff the value of the logs which he lost, less the value of the logs which might reasonably have been reclaimed. None, so far as is shown by the evidence, were reclaimed."

The jury found a verdict for the plaintiff for $928.20.

The defendants took a writ of error, and assigned for error, 1st. The admission of the evidence offered by plaintiff. 2d and 3d. The rejection of the evidence offered by the defendants. 4th. The portion of the charge given above.

*C. A. Mayer* and *W. H. Armstrong* (with whom was *I. B. Niles*), for plaintiffs in error, cited on the 1st assignment, Hough v. Doyle, 4 Rawle 294; Hannay v. Stewart, 6 Watts 489; Dick v. Cooper, 12 Harris 221; Patton v. Minesinger, 1 Casey 394; 1 Greenl. Ev., §§ 113, 116.

On the 2d and 3d assignments, Heart v. Hummel, 3 Barr 414.

On the 4th assignment, Keeler v. Vantwyle, 6 Barr 250; Fisher v. Filbert, Id. 61.

*H. Sherwood* and *C. H. Seymour* (with whom was *B. B. Strang*), for defendant in error, cited on the 1st assignment, Salmon v. Rance, 3 S. & R. 311; Wolverton v. Commonwealth, 7 Id. 273; Hannay v. Stewart, 6 Watts 487.

[Dodge *v.* Bache.]

On the 2d and 3d assignments, 1 Stark. on Ev. 175, 177.

On 4th assignment, Long *v.* Ramsey, 1 S. & R. 72; Brown *v.* Campbell, Id. 176; Graham *v.* Graham, Id. 330; Galbraith *v.* Black, 4 Id. 211.

The opinion of the court was delivered, March 19th 1868, by SHARSWOOD, J.—The 1st error assigned is as to the admission of the testimony of Ezra Chandler. One of the questions in the cause, if not the principal one, was whether McDougall, the agent of the defendants, had cut the slash-boards of the dam at the Marsh creek pond, by which an artificial freshet was caused in the stream below, and the plaintiff's logs were carried away and lost. It was offered to prove by Chandler that McDougall had declared that he intended to do this, before the dam was let off. It was objected to on the ground that such declaration of the agent was no part of the *res gestæ*, and, therefore, upon the familiar and well-settled rule of evidence, not admissible against his principal. But clearly this rule had no application. The declaration was offered not as in itself affecting the principal, but in corroboration of the other testimony in the cause that McDougall and Charles Grinnell, his workman, were seen to go to the mill together—that Grinnell soon after was observed on the dam with an axe and that he appeared to be chopping something. Now, when the question is whether a person has done a particular thing, and some evidence of it has been given, it is surely competent to show in corroboration that he had avowed his purpose beforehand. His principals would not have been affected by his mere intentions unexecuted. But to confirm other evidence of the act itself, his declarations were unquestionably admissible—not as the declarations of an agent but of the individual whose act was in question. We think, therefore, that there was no error in the admission of this evidence.

We will consider the 2d and 3d assignments of error together. It became material to show that Charles Grinnell, who was said to have been seen on the dam with an axe chopping something some time in December 1855, was not then in the employment of McDougall. For this purpose Grinnell himself was called and testified that he went to work for a Mr. Dickinson in the fore part of November 1855, and continued in his service until February 1856. Dickinson was then called and stated that Grinnell had worked for him at different times, but he could not recollect when or how long. It was then offered to show by the witness that, having refreshed his recollection from his own book and entries therein in his own handwriting, he believes that Grinnell worked for him between the said dates: this for the purpose of fixing the time when Grinnell worked for him and in corroboration of Grinnell's testimony. This was objected to because it was belief and

[Dodge v. Bache.]

not the recollection of the witness, which was offered. The court rejected this testimony, and in this we think there was error. We may assume that the witness, having looked at the entries, was still unwilling to testify that he recollected the dates, but was willing to say that he believed them to be correct. On what was such a belief necessarily founded? It could only be on his knowledge that the entries were a truthful record of his transactions made at the time. In general it is true that a witness must testify to facts in his personal knowledge and recollection, but it is not an universal rule. On questions of the identity of persons and handwriting, it is every day's practice for witnesses to state that they believe the person to be the same or the handwriting to be that of a particular individual, although they will not speak positively, and the degree of credit to be attached to the evidence is a question for the jury: Starkie on Ev., ed. of 1860, p. 173; Watson v. Brewster, 1 Barr 381. It is impossible for any man to testify from his own knowledge how old he is. In the nature of things he has no personal recollection of when he was born. But who doubts that he can state his belief as to the fact? In all these cases indeed he must give the grounds of his belief, and then the credit to be attached to it will be for the jury. In Heart v. Hummel, 3 Barr 414, it was held that a witness may state the number of days on which men were employed, from a book kept by himself, in which he knows he correctly entered the days they were at work, about the time at which the work was done. See Insurance Company, 15 Maryland 54; Russell v. Hudson River Railroad Co., 17 N. Y. 134; Seavy v. Dearborn, 14 N. H. 351; Webster v. Clark, 10 Foster 245; State v. Colwell, 3 R. I. 132. This was in substance the same as that which was proposed in this case. We think that these assignments of error are sustained.

As to the 4th error assigned to the charge, in stating to the jury positively that none of the logs, as shown by the evidence, were reclaimed, that part of the charge was unquestionably erroneous, though it is most probable that the judge meant to refer only to the logs washed away, not to those lodged on the bank, which were recovered, and that the jury so understood him. As the case goes back this will, of course, be remedied on another trial.

Judgment reversed, and a *venire facias de novo* awarded.